---

(No. 14171.—Reversed and remanded.)
EDWARD E. SHINNICK, EXr. *et al.* Appellants, *vs.* HERMAN ERBY *et al.* Appellees.

*Opinion filed October 21, 1922.*

1. DEEDS—*when family settlement will be sustained.* A court of equity looks with favor upon a family settlement, and a deed from a mother to her three children will not be set aside where there was no confidential relation to affect the validity of the transaction, although two of the children may have endeavored to secure the settlement to avoid the exercise of undue influence on the part of the other, who lived with the mother.

2. PARTITION—*when a decree should conform to agreement entered into in a family settlement.* Where a mother has executed a deed to her two sons and a daughter and a settlement is agreed upon among the children but the daughter does not sign the contract of settlement until the sons agree that she will have the homestead at the mother's death, a decree for partition after the mother's death should not include such homestead in disregard of the agreement, even though the daughter has endeavored to set aside the mother's deed and in taking such position has not admitted the making of the agreement, but the daughter should be allowed to amend her pleadings so as to allege her right to the homestead.

APPEAL from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

BENJAMIN F. J. ODELL, for appellants.

EASTMAN, WHITE & HAWXHURST, (HOMER C. DAWSON, of counsel,) for appellees.

304—16

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On September 21, 1917, Philippina Erby filed her bill in this case in the circuit court of Cook county praying the court to set aside and declare null and void a deed executed by her on August 28, 1917, to her sons, Herman and Arthur Erby, and her daughter, Elizabeth A. Schmidt, conveying two lots at 121 to 127 West Grand avenue, in Chicago, on which there was a factory building, and a lot known as 6322 Winthrop avenue, which was her homestead. The bill charged a confidential relation between the complainant and her sons, and that they exercised undue arts and fraudulent practices and resorted to falsehood and misrepresentations to induce the execution of the deed, and she averred that she did not know until afterward that she had signed a warranty deed or such an instrument as was executed. The daughter, Elizabeth, did not answer and was defaulted. Herman and Arthur answered, denying the existence of a confidential relation, misrepresentations, undue influence or fraudulent practices in procuring the execution of the deed, and asserting its validity. The issues were referred to a master in chancery to take the evidence and report the same with his conclusions. The complainant, Philippina Erby, testified before the master, but before the conclusion of her testimony she was taken ill and soon afterward died. She had executed a will on August 9, 1918, by which, after two bequests of $100 each, she devised to her sons, Herman and Arthur, one-half of the factory premises, subject to the payment of solicitor's fees, costs and expenses in the suit, and gave the residue of her estate to Elizabeth. She appointed her solicitor of record, Edward E. Shinnick, executor, and directed him to pursue, carry on and continue the litigation. The executor was substituted as complainant and another solicitor took charge of the case for him. After the death of Philippina Erby, the defendants, Herman and Arthur, filed their cross-bill, making Elizabeth A.

Schmidt, Edward E. Shinnick, executor, and others, de-
fendants, praying for partition of the lands involved in the
suit.  During the pendency of the suit a fire occurred in
the factory building, and a petition was filed by Herman
and Arthur for an accounting for damages sustained by the
refusal of Elizabeth to co-operate in the collection and use
of insurance money and for the appointment of a receiver.
A receiver was appointed and there was a re-reference to
the master and a reference on the cross-bill.  The master
made separate reports and recommended the dismissal of
the bill of complaint.  On the cross-bill he recommended
partition of all the property, including the homestead; re-
ported that Elizabeth had allowed the homestead premises
to deteriorate for lack of repairs and permitted them to be
sold for taxes, and advised that she be charged with rental
of the homestead from the death of her mother, and the
average rental value was $150 per month.  The chancellor
heard the cause on exceptions to the master's report and en-
tered a decree dismissing the bill of complaint, granting the
relief prayed for in the petition concerning insurance and in
the cross-bill in accordance with the report of the master.

Philippina Erby, in her examination before the mas-
ter, which was not concluded before her death, testified in
accordance with the averments of her bill.  The daughter,
Elizabeth A. Schmidt, who had been defaulted, became a
witness for the executor and assumed a partisan attitude,
but considering all her testimony it was not entirely con-
sistent with the bill.  There was the same personal feeling
manifested by Herman and Arthur, but allowing for feel-
ing and exaggeration we find the facts proved as follows:
Philippina Erby and her husband, William Erby, were the
owners, as joint tenants, of the lots on West Grand ave-
nue, on which there was a building occupied as a factory
by Erby and his sons, Herman and Arthur, for the manu-
facture of carriage and wagon bodies, and they likewise
owned in joint tenancy the premises at 6322 Winthrop ave-

nue, where they lived. On December 13, 1909, they each made a will identical in terms. Each one, after making a bequest of $500, gave to the other the balance of their respective estates for life with remainder to their daughter, Elizabeth, and their two sons, Herman and Arthur, share and share alike. Erby died on May 29, 1912, and the title to the factory premises and residence lot became complete in the survivor, his co-tenant, Philippina. At the time of his death a corporation of William Erby & Sons Company had a capital stock of $35,000, and William had 136 shares, Herman 95, Arthur 95 and Charles H. Kramer 24. After the death of Erby the widow, Philippina, disposed of 40 shares of stock and divided the remainder equally among the children. The manufacturing business continued and prospered. Elizabeth was married to Marquette E. Schmidt in 1913, and she and her husband lived with her mother in the homestead and the sons were married and lived elsewhere. For a week prior to August 28, 1917, Philippina had been visiting with her son Herman at his home in Wilmette, and on the morning of that day he took her to her home and left her there. During the forenoon he returned with his brother, Arthur, and their attorney, with a draft for a warranty deed prepared for her signature conveying the factory premises and the homestead to the three children for the consideration of one dollar and love and affection, and a draft for an agreement to be executed by the three children giving their mother the net rents and income of the property during the remainder of her life. The plan contemplated was to have the mother, Philippina, have a life estate in all the premises with remainder to the three children, and this was to be accomplished by the separate documents. When Herman, Arthur and the attorney came to the home with the papers they had prepared, Elizabeth was called in and the deed was read aloud and the matter explained. Philippina was told that the plan would save inheritance tax and costs for the administration of her estate

and that it was in accordance with the understanding and intention of herself and husband in the execution of their wills. Elizabeth objected to the execution of the deed by her mother and said that she had promised her the home. She went up-stairs and brought down a draft for a deed for the home from the mother to her, reserving a life estate to the mother, which she had had prepared two months previously. The subject was talked over and Philippina executed the deed to the children. The contract signed by Herman and Arthur, giving their mother the rents and income for her lifetime, was presented to Elizabeth, and she refused to sign it and said she would have to see her attorney first. That contract was an essential part of the plan and it was necessary for her to sign it to carry out the arrangement. Herman testified that he then said, "Elizabeth, to show you that Arthur and myself mean to be right to you, we will give you this home at mother's death;" that the mother turned to Elizabeth and said, "Now, Elizabeth, are you satisfied?" and Elizabeth said, "Yes, if that is the case then I will sign it," and signed the three copies of the contract. Arthur testified that Herman said to Elizabeth, "To show you that we mean to do what is more than fair to you, we will give you our equity or interest in this home at mother's death," and Elizabeth said, "Well, if you will do that I will sign it;" that the mother said, "Are you satisfied now, Elizabeth?" and Elizabeth then signed the three copies, and the mother then said, "Well, now I am happy; I know that you are all satisfied and I can live for the rest of my days feeling perfectly satisfied." The deed was then delivered to the attorney and recorded. The mother occupied the homestead and was paid the rents of the factory property until her death.

There was no confidential relation existing between Philippina Erby and her sons which could affect the validity of the transaction. They naturally looked after the business property and outside matters for her, and the daugh-

ter, Elizabeth, who lived with the mother, practically man-
aged the home and attended to matters connected with it.
Elizabeth had caused the draft for a deed to be made giv-
ing her the home at her mother's death and claimed an
agreement of her mother to that effect. As she was seek-
ing to obtain the home property, it may be that there was
some suspicion on the part of the brothers of the possible
effect of her influence on her mother which induced their
action, but if so, it did not affect the validity of the deed
and agreement. Apparently everything was understood and
satisfactory to all the parties until Elizabeth's husband came
home in the evening and was informed of what had been
done. It is said that he explained the effect of the transac-
tion to his wife and her mother, and it is a fair inference
that the objections afterward made had their origin in his
explanations. At any rate, the mother and daughter both
attempted to repudiate what had been done. The trans-
action amounted to a family settlement, neither unfair nor
unreasonable and in harmony with the wills which had been
executed by both William and Philippina. Such a settle-
ment is not looked upon with disfavor but should be sus-
tained, and the chancellor did not err in dismissing the bill
of complaint.

While the cause was in reference before the master the
factory was partly destroyed by fire, and the loss was ad-
justed by the insurance company and Herman and Arthur
at $6261. Separate checks were made for the amount of
the insurance, but Elizabeth refused to indorse her check.
Herman and Arthur by their petition set forth the loss and
her refusal, and offered evidence that the amount expended
in restoring the premises was greatly increased by the de-
lay and changing conditions, and they asked to have her
charged with damages on that account. That was done by
the decree, and there was no error in that regard.

Elizabeth was defaulted on the original bill and testi-
fied in support of the bill, but she answered the cross-bill

and appealed from the decree granting the relief prayed for in that bill. The complainants in the cross-bill took a decree not only for the partition of the factory premises, which was correct, but also the homestead, which in the family settlement they agreed should belong to Elizabeth after the death of her mother, and charging her with rent and damages from deterioration. This was directly contrary to their own testimony, and there was no basis in the evidence for the report of the master or the decree concerning the homestead. This was a family quarrel, marked with the malevolence and rancor usual in such cases, which is quite apparent in the testimony and the arguments of counsel. Dollars have outweighed duty and affection, and the litigation has been discreditable to all the parties. Elizabeth, while assigning error on the decree on the cross-bill, has insisted, and still insists, that the deed of the mother was void and has not admitted the making of the agreement which gave her the homestead. Under all the circumstances, and considering the rights of the parties, the litigation should be brought to an end, and the court will see that it is now done.

The decree dismissing the bill is affirmed, and the decree so far as it relates to the insurance and the share of Elizabeth for repairs is also affirmed. The decree on the cross-bill is reversed and the cause is remanded, with leave to Elizabeth, defendant in the cross-bill, to amend her answer, if so advised, by alleging her right to the homestead from and after the death of Philippina Erby, and if such amendment is made the chancellor is directed to enter a decree vesting her with the homestead from the death of Philippina and for partition of the remainder of the premises conveyed by the deed. If Elizabeth should decline to amend her answer in accordance with such leave the chancellor is directed to re-enter the decree on the cross-bill.

*Reversed and remanded, with directions.*